UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE DONAHEE,

      Petitioner,

                           Case No. 12-CV-12297

v.

                           HON. MARK A. GOLDSMITH

PAUL KLEE,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

### I.  INTRODUCTION

Petitioner Kyle Donahee, confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), through his attorney Douglas R. Mullkoff.  Petitioner was convicted by a jury in the Wayne County Circuit Court of three counts of third-degree criminal sexual conduct (CSC) (person between 13 and 15), Mich. Comp. Laws § 750.520d(1)(a).  Petitioner is currently serving concurrent sentences of 7 to 15 years for the third degree CSC convictions.  Petitioner, through his counsel, argues that he should be granted a new trial because of statements admitted at trial which were made while in custody after he had asserted his right to counsel.  Respondent has filed an answer to the petition (Dkt. 8), asserting that the claim is meritless.  For the reasons stated below, the Court denies the petition for writ of habeas corpus.

### II.  BACKGROUND

The material facts leading to Petitioner's conviction are gleaned from the trial court record.

1

The complainant was twelve years old when she first met Petitioner, who was twenty-two years old.  One week after the complainant met Petitioner, they were "messing around" and Petitioner kissed the complainant.  11/10/09 Trial Tr. at 88, 90, 158 (Dkt. 9-3).  Petitioner asked the complainant to be his girlfriend.  Id. at 90. The complainant thought Petitioner was serious about being her boyfriend.  Id.  The complainant's mother expressed concern over her spending time with an older man in the later hours and at the park.  Id. at 13-14.  The complainant started sneaking out her bedroom window after her mother was asleep, id. at 94, and meeting Petitioner down the street.  Id. at 94-95, 157.  They would talk about their day.  At one point, Petitioner asked the complainant how she would feel about marrying him.  Id. at 97, 157.  When the complainant said that she would say "yes" if he asked her, Petitioner asked the complainant to marry him.  Id. at 97.  The complainant said "yes" — later explaining at trial that she was in love and wanted to spend the rest of her life with Petitioner.  Id.

Sometimes the complainant and Petitioner would talk about sex.  Id.  The complainant testified that, after her thirteenth birthday, she and Petitioner engaged in an act of sexual intercourse in Livonia, Michigan, that three episodes took place in her bedroom in Wayne County, Michigan, and that one last act of sexual intercourse occurred in Wixom, Michigan.  Id. at 120-121.  On August 8th, the complainant ran away from home to be with Petitioner.  Id. at 16, 45-46, 124.  The complainant later called her mother stating that she would return home if they did not press charges against Petitioner.  On August 13th, Sergeant Kapanowski and Officer Amore arrested Petitioner at work in Brighton, Michigan.  11/11/09 Trial Tr. at 4-6 (Dkt. 9-4).  After being taken into custody, Petitioner confessed to sexual intercourse with the complainant and wrote a statement to that effect.  Id. at 20-22.

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> In this case, the officer in charge, Kenneth Kapanowski, questioned defendant. There is no dispute that defendant was subjected to custodial interrogation: he was questioned after having been arrested and booked into the jail.  People v. Zahn, 234 Mich.App 438, 449; 594 NW2d 120 (1999).  Defendant was advised of his rights and admittedly waived them during the initial interrogation. He denied wrongdoing, and the interview was suspended.  Kapanowski was not required to re-advise defendant of his rights before the second interview, which began less than an hour after the first one ended.  People v. Godboldo, 158 Mich.App 603, 607; 405 NW2d 114 (1986).  Kapanowski reminded defendant that his rights were still in effect, and defendant stated that he understood them.  At one point, defendant said, "I think this is where I need an attorney."  This reference to counsel was equivocal. Clark v. Murphy, 331 F3d 1062, 1069-1072 (CA 9, 2003) ("I think I would like to talk to a lawyer" is equivocal); Burket v. Angelone, 208 F3d 172, 198 (CA 4, 2000) ("I think I need a lawyer" is equivocal).  At that point, Kapanowski told defendant that questioning would have to cease unless defendant reinitiated the conversation and defendant chose to proceed without counsel. Under the circumstances, the continued questioning was not improper.
>
> There was no evidence that defendant was abused or threatened with abuse, denied food, drink, sleep, bathroom privileges, or medical attention.  Kapanowski apparently said something to defendant about the sexual encounters being consensual because the victim admitted to voluntarily engaging in sexual relations with defendant.  But Kapanowski never said that because the encounters were consensual, no crime occurred.  Rather, defendant assumed that he committed no crime.  Defendant further testified that Kapanowski said something about going home if he made a statement.  But, Kapanowski denied telling defendant he would be able to go home, and defendant never claimed that Kapanowski told him that the statement had to include an admission to having sexual relations with the victim.  Rather, defendant only admitted as much because he thought that was what Kapanowski wanted to hear.

3

People v. Donahee, No. 296050, 2011 WL 923501, at *2 (Mich. Ct. App. Mar. 17, 2011) (Dkt. 9-6).  Petitioner's conviction was affirmed on appeal.  Id., leave denied 800 N.W.2d 91 (Mich. 2011) (Dkt. 9-7).

The petitioner seeks a writ of habeas corpus.  Petitioner argues that he is entitled to habeas relief because the trial court's decision to admit his statements, made while in custody, after he has asserted his right to counsel was contrary to, or involved an unreasonable application of, clearly established federal law.

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A "federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the

5

Supreme Court's precedents.  Id.  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id. (quotation marks omitted).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford v. Viscotti, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

## IV.  ANALYSIS

The Court first addresses and rejects Petitioner's substantive claim, and then addresses whether to issue a certificate of appealability, as well as whether to allow Petitioner leave to proceed in forma pauperis.

### A.  Petitioner's Substantive Claim

Petitioner contends that the trial court erroneously admitted statements made by Petitioner while in custody and after he asserted his right to counsel.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> i.   the person must be warned that he has a right to remain silent;

6

    ii.    that any statement he does make may be used against him; and

    iii.    that he has a right to the presence of an attorney, either retained or appointed.

Id. at 444.

When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The rule in Edwards is considered "a corollary to Miranda's admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" Arizona v. Roberson, 486 U.S. 675, 680 (1988) (quoting Miranda, 384 U.S. at 474). The rationale behind Edwards is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." Maryland v. Shatzer, 559 U.S. 98, 104 (2010). Indeed, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." Roberson, 486 U.S. at 686.

The "[i]nvocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." Davis v. United States, 512 U.S. 452, 459 (1994) (quotation marks omitted). The suspect's statement "must unambiguously request counsel." Id. Additionally, "[u]nless the suspect actually requests an attorney, questioning may continue." Id. at 462.

7

In the present case, the trial court judge and the Michigan Court of Appeals did not unreasonably apply clearly established federal law by finding that Petitioner did not clearly and unequivocally invoke his right to counsel, because fair-minded jurists could conclude that Petitioner's passing reference to an attorney was an ambiguous request to speak with counsel. Indeed, in <u>Davis</u>, the Supreme Court concluded that the defendant's statement "Maybe I should talk to a lawyer" was not an unequivocal request for counsel. <u>Davis</u>, 512 U.S. at 462.

Other cases have found similar language to be too equivocal to amount to an unambiguous request to speak to counsel, so as to require the police to cease their interrogation. <u>See</u> <u>United States v. Amawi</u>, 695 F.3d 457, 485 (6th Cir. 2012) (defendant's statements during <u>Miranda</u> warning, that "I'm going to wait" and asking "is there a lawyer on board" were "neither clear nor unequivocal invocation of the right to remain silent or the right to counsel," as would warrant suppression of inculpatory statements made on board a jet from Jordan to United States from prosecution for conspiracy to kill and maim persons outside the United States); <u>Rogers v. Kerns</u>, 485 F. App'x 24, 31 (6th Cir. 2012) (habeas petitioner's inquiry after signing his <u>Miranda</u> waiver form and immediately before confessing "I can't write this with a lawyer or anybody[?]," was not an unequivocal invocation of the right to counsel); <u>Cornelison v. Motley</u>, 395 F. App'x 268, 274 (6th Cir. 2010) (habeas petitioner's comment, "What if I want my lawyer present first?" was too ambiguous to require the police to terminate their interrogation, particularly where petitioner proceeded afterward to fill out waiver form and then indicated he wished to speak with the police); <u>Ledbetter v. Edwards</u>, 35 F.3d 1062, 1070 (6th Cir. 1994) (defendant's statement during police interrogation, that "it would be nice" to have an attorney, was too ambiguously worded to require police to stop questioning defendant); <u>U.S. v. Mullikin</u>,

534 F. Supp. 2d 734, 743 (E.D. Ky. 2006) (defendant's equivocal and ambiguous statement to arresting officer that "I think I might need a lawyer" did not invoke right to counsel).

After Petitioner was arrested and booked, Officer Kapanowski questioned Petitioner. Petitioner was advised of his rights and admittedly waived them during the initial interrogation. Officer Kapanowski conducted a second interview, less than an hour after the first one had ended, and reminded Petitioner that his rights were still in effect and Petitioner stated that he understood them.  At one point during the interview, Petitioner said, "I think this is where I need an attorney."  Officer Kapanowski told Petitioner that the questioning would have to cease unless he reinitiated the conversation and Petitioner chose to proceed without counsel.  The sergeant "wasn't sure if he meant he really wanted one or he didn't want one. [Donahee] was just thinking about it, so kind of a clarification of whether he wanted to talk to me more or he didn't want to talk to me more."  11/4/09 Hr'g Tr. at 19-21 (Dkt. 9-2). "It wasn't clear to me what he wanted at that point."  Id. at 45.  "That's why I followed up with the question immediately after that, 'Is it your wish to not talk to me anymore?'"  Id. at 46.

After Petitioner asked him a question, the officer responded and explained that he could not talk to him because he mentioned that he "might" want an attorney.  Id. at 20.  Sergeant Kapanowski let Petitioner know that he could go back to his cell and think about it; then, if he wanted to initiate a conversation afterward, they could talk more.  Id. at 20-21.  At that point "[Donahee] just started talking again."  Id. at 21. Sergeant Kapanowski understood that Petitioner initiated that contact by continuing to talk to him after the officer told him that Petitioner had to initiate the conversation.  Id. at 22-23.  Petitioner talked more about the texting, phone calls, and the "relationship," which eventually lead to Petitioner's admission.  Id. at 21.

In Oregon v. Bradshaw, 462 U.S. 1039 (1983), a plurality of the Supreme Court concluded that the police could speak to a defendant, without depriving him of his rights, when the defendant asked, "Well, what is going to happen to me now?" even though the defendant had previously invoked his right to counsel. Id. at 1045–1046. The plurality concluded that, by asking this question, the defendant had "evinced a willingness and a desire for a generalized discussion about the investigation." Id. By contrast, the dissent in Bradshaw indicated that in order to reinitiate an interrogation after invoking the right to counsel, the suspect must "demonstrate a desire to discuss the subject matter of the criminal investigation." Id. at 1055 (Marshall, J, dissenting). The Sixth Circuit "has reconciled the plurality and dissent in Bradshaw as stating a general rule that an Edwards initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case." Davie v. Mitchell, 547 F.3d 297, 305 (6th Cir. 2008) (quotation marks omitted).

In the present case, the trial court found that Petitioner reinitiated the conversation, and the officer reported, in detail, what occurred. 11/4/09 Hr'g Tr. at 78-79. When asked whether he initiated the conversation after mentioning an attorney, Petitioner answered, "Yes." 11/4/09 Hr'g Tr. at 30; 11/11/09 Trial Tr. at 27-28. Petitioner initialed his answer. 11/4/09 Hr'g Tr. at 30-31; 11/11/09 Trial Tr. at 28. Petitioner signed and initialed a statement that he told the officer he might want an attorney and decided to continue without an attorney. After Petitioner wrote out a statement admitting that he had sex with the victim, Petitioner also answered some questions and initialed those answers. When asked whether he mentioned that he might want an attorney while speaking with the sergeant, Petitioner answered, "Yes." 11/4/09 Hr'g Tr. at 30-31; 11/11/09 Trial Tr. at 27. And when asked whether he agreed to talk to the sergeant without an attorney present, Petitioner answered, "Yes." Id. After all the questions were asked and

10

answered, the officer went back through the questions, read the answers, and asked Petitioner to initial the answers if he agreed with them.  11/11/09 Trial Tr. at 23.

Petitioner was not pressured to talk by police interrogation, but, rather, he "evinced a willingness and a desire for a generalized discussion about the investigation."  See United States v. Ware, 338 F.3d 476, 481 (6th Cir. 2003) (arrestee initiated interrogation after invoking his Miranda right to counsel, where arrestee, after being informed that officer was unable to contact the attorney the arrestee wished to speak to, stated "I'll just talk, that's all, you know, just forget it").  Petitioner is unable to show that the state courts' conclusion that Petitioner did not actually invoke his right to counsel "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.

Moreover, Petitioner is unable to show how he was prejudiced by the admission of his statements to the police.  For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Even if Petitioner was interrogated in violation of Edwards v. Arizona, the admission of his statements to Sergeant Kapanowski did not have a substantial and injurious influence or effect on his jury, in light of the far more incriminating evidence that was introduced against Petitioner at his trial.  See Kyger v. Carlton, 146 F.3d 374, 382-383 (6th Cir. 1998).

Therefore, the Court denies Petitioner's habeas application.

### B.  Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  See, e.g, Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).  Accordingly, a certificate of appealability is not warranted in this case.

### C.  Leave to Proceed In Forma Pauperis

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)).

Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith.  Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.  Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal.  Id.

## V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants Petitioner leave to appeal in forma pauperis.

SO ORDERED.


Dated: October 29, 2014
     Detroit, Michigan

s\Mark A. Goldsmith
MARK A. GOLDSMITH
UNITED STATES DISTRICT JUDGE


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 29, 2014.

s/Johnetta M. Curry-Williams
JOHNETTA M. CURRY-WILLIAMS
CASE MANAGER